Petition of SOUTHERN LUMBER & MFG. CO. NEW RIVER
LUMBER CO. *v.* TENNESSEE RY. CO. *et al.* TENNESSEE
RY. CO. *v.* STANDARD TRUST CO. *et al.*

(*Knoxville.*   September  Term,  1918.)

1. **COURTS.** Judgment. Jurisdiction by consent or waiver. Collateral
   attack.

When the court has no jurisdiction of the subject-matter, it cannot
be conferred either by waiver or consent, and all of its orders
and decrees are a nullity, and may be collaterally attacked. (*Post,
p.* 329.)

Cases cited and approved: Agee v. Dement, 20 Tenn., 332; White
v. Buchanan, 46 Tenn., 32; Noel v. Scoby, 49 Tenn., 20; Ferris v.
Fort, 2 Tenn., Ch. 150; Board v. Bodkin Bros., 108 Tenn., 700;
Baker v. Mitchell, 105 Tenn., 610.

2. **APPEAL AND ERROR.** Courts. Jurisdiction of subject-matter. Ob-
   jections.

The question of jurisdiction of the subject-matter can be raised at
any time in any court, and may be considered by the supreme
court on appeal. (*Post, pp.* 329-340.)

Cases cited and approved: Penn. R. R. Co. v. International Coal
Co., 230 U. S., 184; Southern Railway Co. v. Tift, 206 U. S., 428;
Texas & Pacific R. R. Co. v. Abilene Cotton Oil Co., 204 U. S.,
426;  Penn. R. R. Co. v. Clark Coal Co., 238 U. S., 456.

Cases cited and distinguished: Penn. R. R. Co. v. Puritan Coal Co.,
237 U. S., 121; Ill. Cent. R. R. Co. v. Mulberry Hill Coal Co., 238
U. S., 275.

3. **COMMERCE.** Interstate commerce act. Remedies of shipper.

Interstate Commerce Act, section 22 (U. S. Comp. St. section 8595),
providing that nothing in the act shall abridge existing remedies,
but that the provision of the act shall be in addition there-
to, reserves to the shipper his remedies existing at common law
or statute, in so far as they do not conflict with the provisions of

In re Lumber & Mfg. Co.

the act, so that, where no administrative question is involved, and the shipper does not invoke the aid of the Interstate Commerce Commission, he may prosecute his common-law or statutory remedies. (*Post, pp.* 340, 341.)

4. COMMERCE. Interstate commerce commission. Procedure. Remedies of shippers.

Where a shipper applies to the Interstate Commerce Commission in regard to discrimination, he must proceed in accordance with the Interstate Commerce Act. (*Post, p.* 341.)

5. COMMERCE. Actions for damages against carriers. Interstate commerce. Procedure.

Interstate Commerce Act, section 9 (U. S. Comp. St. section 8573), allowing persons damaged by any common carrier to complain to the Interstate Commerce Commission, or to bring suit for damages in federal courts, provides two methods for the ascertainment of damages, which are exclusive, one to the commission, and the other to the federal courts. (*Post, p.* 341.)

6. COURTS. Shippers' actions for damages. Action on award of interstate commerce commission. Jurisdiction of federal and state courts.

Under Interstate Commerce Act, section 16 (U. S. Comp. St. section 8584), relating to awards of damages to shippers, when an award has been made by the Commission, but such order has not been complied with by the carrier, the shipper may institute suit either in the federal or state court. (*Post, p.* 341.)

7. COURTS. Actions for discrimination. jurisdiction of state court.

The State court has no jurisdiction of a suit by a shipper to recover damages for discrimination against a common carrier, based on a finding of the Interstate Commerce Commission reducing rates for freight shipments on the ground of discrimination; no award of damages having been made by the Commission. (*Post, p.* 341.)

---

FROM SCOTT.

---

Appeal from the Chancery Court of Scott County.— Hon. HUGH G. KYLE, Chancellor.

A. W. AKERS and PERKINS BAXTER, for petitioner.

H. M. CARR, for receiver.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The complainant is a' corporation engaged in the lumber and stave business, and for several years has operated a sawmill at Nick's Creek, Tenn.

The defendant Tennessee Railway Company owns sixty miles of railroad in Tennessee, and connects with the Cincinnati, New Orleans & Texas Pacific Railway Company at Oneida, Tenn. Under an agreement with the Cincinnati, New Orleans & Texas Pacific Railway Company, the Tennessee Railway Company received freight on its line for interstate shipment, and it is conceded that it was engaged in interstate transportation.

Nick's Creek and Norma are two stations on the road of the Tennessee Railway Company—the former being thirty miles from Oneida and two hundred forty miles from Cincinnati; the latter being twenty-two miles from Oneida and two hundred thirty-two miles from Cincinnati.

Since 1906 the published tariff on lumber from Norma to Cincinnati has been fifteen cents per hundred pounds, while the rate from March 1, 1914, has been seventeen one-half cents per hundred pounds from Nick's Creek to Cincinnati.

On December 9, 1915, the complainant filed a complaint before the Interstate Commerce Commission against the Tennessee Railway Company and the Cincinnati, New Orleans & Texas Pacific Railway Com-

pany, charging that the rate of 17½ cents from Nick's Creek to Cincinnati was unreasonable, and that said rate, when compared with the rate of 15 cents from Norma to Cincinnati, was unduly prejudicial to complainant and Nick's Creek, and unduly preferential to Norma and those doing business at that point.

Answers were filed, proof taken, and a hearing had, and it was decreed by said Interstate Commerce Commission that said rate of 17½ cents from Nick's Creek to Cincinnati was not unreasonable, but that same was prejudicial and discriminatory, and it was decreed that defendant should in the future only charge 1 cent per hundred pounds more from Nick's Creek to Cincinnati than it charged from Norma to Cincinnati, which, on the then tariff, would make the rate from Nick's Creek to Cincinnati 16 cents per hundred pounds. This order was made on October 12, 1917.

The defendant Tennessee Railroad Company was being administered in the chancery court of Scott county, Tenn., as an insolvent corporation, in the above-styled causes; Byrd M. Robinson being its receiver.

On January 31, 1918, this suit was instituted by a petition being filed in the above causes, in which the New River Lumber Company set forth the foregoing facts, and further charged that said discrimination, as found by the Interstate Commerce Commission, was in violation of the Interstate Commerce Act (Act Cong. Feb. 4, 1887, chapter 104, 24 Stat. 379), and that it was damaged in the sum of $6,000 on account thereof, and prayed for a decree for that amount.

After the cause was put at issue, the matter was referred to the master to report as to damages. It is not necessary to go into detail as to this matter, further

than to say that the master filed his report, to which both parties filed exceptions, and after hearing the whole matter the chancellor dismissed the petition of the complainant, on the ground that it had not sufficiently shown itself entitled to any damages.

The period during which the complainant shipped lumber from Nick's Creek to Cincinnati and points beyond, and upon which it paid a rate of 17½ cents, was from September 1, 1915, to November 1, 1917, and the difference in freight on this lumber, had a charge of only 16 cents been made, as was found to be proper by the Interstate Commerce Commission, would have amounted to $2,844.71, and the complainant insists it is damaged in this sum.

The complainant has brought the case to this court by appeal and has assigned errors.

The defendant, for the first time in this court, raises a question of jurisdiction, and says that under the federal act to regulate commerce the state court is without jurisdiction in a case of this character.

It is well settled that, when the court has no jurisdiction of the subject-matter, it cannot be conferred either by waiver or consent, and all of its orders and decrees are a nullity, and may be collaterally attacked. Gibson's Suits in Chancery (New), par. 290; *Agee* v. *Dement,* 1 Humph., 332; *White* v. *Buchanan,* 6 Cold., 32; *Noel* v. *Scoby,* 2 Heisk 20; *Ferris* v. *Fort,* 2 Tenn. Ch., 150; *Board* v. *Bodkin Bros.,* 108 Tenn., 700, 69 S. W., 270; *Baker* v. *Mitchell,* 105 Tenn., 610, 59 S. W., 137.

In *Penn. R. R. Co.* v. *International Coal Co.,* 230 U. S., 184, 33 Sup. Ct., 893, 57 L. Ed., 1446, Ann. Cas., 1915A, 315, the question of jurisdiction was raised for the first time in the supreme court of the United States, and the

court considered the question and held that it had jurisdiction. The question of jurisdiction of the subject-matter can be raised at any time in any court, and we think it proper for this court to consider that question here, and the case of *Southern Railway Co.* v. *Tiffts,* 206 U. S., 428, 27 Sup. Ct., 709, 51 L. Ed., 1124, 11 Ann. Cas., 846, relied on by the complainant, is not in conflict with this holding.

In order to a proper understanding of this question of jurisdiction it becomes necessary to consider certain parts of the federal act to regulate commerce, together with its amendments, as well as some of the decisions of the supreme court of the United States construing the same. The provisions of the Interstate Commerce Act bearing upon this question are as follows:

"Sec. 8. That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

"Sec. 9. [in so far as here material]. That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common

carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure heren provided for he or they will adopt."

"Sec. 16 [in so far as here material]. That if, after hearing on a complaint made as provided in section thirteen of this act, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this act for a violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named.

"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the circuit court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, *or in any State court of general jurisdiction having jurisdiction of the parties,* a petition setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit in the *Circuit Court of the United States* shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima-facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the circuit court nor for costs at any subsequent stage of the proceedings unless they

accrue upon his appeal. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of· an order for the payment of money shall be filed in the circuit court *or State court* within one year from the date of the order, and not after." [Part *underscored* were added by Act June 18, 1910.]

"Sec. 22 [in so far as here material]. Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to· such remedies." U. S. Comp. St., sections 8572, 8573, 8584, 8595.

Without a careful analysis of these provisions it may appear that the State courts have jurisdiction of every character of a case that may arise with· reference to transportation of commerce under either the common law or the Interstate Commerce Act, and it requires a careful application of the decisions of the supreme court of the United States to these several provisions in order to determine just how far the jurisdiction of the State courts extends.

*Texas & Pacific R. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S., 426, 27 Sup. Ct., 350, 51 L. Ed., 553, 9 Ann. Cas., 1075, was an action instituted in the State court to recover moneys alleged to have been paid for transportation of cotton seed over and above a just and reasonable charge; it being averred that the rate exacted was discriminatory, constituting an undue prefer-

ence. It appeared that the rates charged were those established by the railway company under the Interstate Commerce Act. It was insisted by the plaintiff that, the action being one recognized at the common law, under the authority of section 22 of the Interstate Commerce Act the action could be maintained either in the State or the federal court. On the other hand, it was insisted by the defendant that the court was without jurisdiction, for the reason that the question of discrimination was an administrative one, which, under the act, should be passed upon by the Interstate Commerce Commission and not by the court. The court adopted the theory of the defendant. It held that the matter complained of was actionable at common law, but that, in a case of this kind, such action was destroyed or taken away by the Interstate Commerce Act, but that in all other respects the common-law or statute rights or remedies remained. In other words, the spirit of the Interstate Commerce Act was to provide for uniform, equal, and just rates, and to prohibit unreasonable and discriminatory charges; the court saying, in effect, that, if it were left to the courts to determine this question, one court and jury might hold a certain rate reasonable, while another court and jury might hold the same rate unreasonable, and that as a result there would not be a uniform rate, and the very object for which the law was enacted would be defeated. This question is fully and ably reasoned out in that opinion. Speaking as to the effect of section 22, the court on page 447 of 204 U. S., on page 357 of 27 Sup. Ct. (51 L. Ed. 553, 9 Ann. Cas. 1075), says:

"But it is insisted that, however cogent may be the views previously stated, they should not control, because

of the following provision contained in section 22 of the act to regulate commerce, viz: '. . . Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.' This clause, however, cannot in reason be construed as continuing in shippers a common-law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself. The clause is concerned alone with rights recognized in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common-law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act.''

*Penn. R. R. Co.* v. *Puritan Coal Co.*, 237 U. S., 121, 35 Sup. Ct., 484, 59 L. Ed., 867, was a case where the jurisdiction of the State court was sustained, where the aid of the Interstate Commerce Commission had not been invoked. The court, on pages 131 and 132 of 237 U. S., on pages 487 and 488 of 35 Sup. Ct. (59 L. Ed. 867), said:

''There are several decisions, already cited, which hold that suits against railroads for unjust discrimination in interstate commerce can only be brought in the federal courts. But it must be borne in mind that there are two forms of discrimination—one in the rule and the other in the manner of its enforcement; one in promulgating a discriminatory rule and the other in the unfair enforcement of a reasonable rule. In a suit where the rule of

In re Lumber & Mfg. Co.

practice itself is attacked as unfair or discriminatory, a question is raised which calls for the exercise of the judgment and discretion of the administrative power which has been vested by Congress in the Commission. It is for that body to say whether such a rule unjustly discriminates against one class of shippers in favor of another. Until that body has declared the practice to be discriminatory and unjust no court has jurisdiction of a suit against an interstate carrier for damages occasioned by its enforcement. When the Commission has declared the rule to be unjust, redress must be sought before the Commission or in the United States courts of competent jurisdiction as provided in section 9.

"But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved; the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the State or federal courts."

In *Illinois Central R. R. Co.* v. *Mulberry Coal Co.*, 238 U. S., on pages 282, 283, 35 Sup. Ct., 760, 763 (59 L. Ed., 1306), the court says:

"Upon a review of sections 8 and 9 of the act to regulate commerce, and of the proviso in section 22 which declares that 'nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies,' we held . . . that, while the act gave shippers new rights, it at the same time preserved existing causes of action; that it

did not supersede the jurisdiction of state courts in any
case, new or old, where the decision did not involve the
determination of matters calling for the exercise of the
administrative power and discretion of the Commission,
or relate to a subject as to which the jurisdiction of the
federal courts had otherwise been made exclusive; that
in actions against railroad companies for unjust dis-
crimination in interstate commerce, where the rule of
distribution itself is attacked as unfair or discrimina-
tory, a question is raised which calls for the exercise
of the authority of the Interstate Commerce Com-
mission; but, if the action is based upon a violation or
discriminatory enforcement of the carrier's own rule for
car distribution, no administrative question is involved,
and such an action, although brought against an inter-
state carrier for damages arising in interstate com-
merce, may be prosecuted either in the State or the
federal courts.  And because in that case the action
was not based upon the ground that the carrier's rule
of car distribution was unreasonable or discriminatory,
but that plaintiff was damaged by reason of the car-
rier's failure to furnish it with cars to which it was
entitled even upon the basis of the carrier's own rule
of distribution, it was held that the State court has
jurisdiction without previous application to the Inter-
state Commerce Commission.''

It will thus be seen that, under these authorities, the
complainant in this suit could not prosecute its claim
in either the federal or the State court, but that it was
necessary for it to resort to the interstate Commerce
Commission, which it did, with the result previously
stated.

We have been unable to find where the supreme court of the United States has passed upon the exact question here involved, but the case of *Penn. R. R. Co., v. Clark Coal Co.*, 238 U. S., 456, 35 Sup. Ct., 896, 59 L. Ed., 1406, is nearly in point and very persuasive.

That action was brought in a State court to recover damages for inadequate and unjustly discriminatory car service and supply. The State statute prohibited unjust discrimination, and provided that a carrier guilty of such conduct for such discrimination should be liable for damages treble the amount of injury suffered. The railroad company insisted that the court had no jurisdiction, upon the ground that with respect to car distribution the claim was cognizable only by the Interstate Commerce Commission or by the courts of the United States. It also appeared that in a proceeding before the Commission, which the plaintiff had instituted against the defendant prior to the beginning of the action, the Commission had found that the method of car distribution practiced by the defendant was unjustly discriminatory, and the Commission had made an award of damages accordingly, and it was urged that by reason of this proceeding and the action of the Commission the plaintiff was precluded from maintaining that action, so far as it related to the alleged loss sustained with respect to the mines considered by the Commission. These contentions were overruled by the trial court, and the jury found that the defendant had been guilty of unjust discrimination, and assessed the damages at $41,481, and trebling the amount a judgment was entered for $124,443, which judgment was affirmed by the supreme court of the State. The

supreme court of the United States held that the question of whether the rule or method of car distribution practiced by the railroad company was unjustly discriminatory was one which the Commission had authority to pass upon; that by reason of the nature of the question involved in an attack upon the method of distributing cars no action was maintainable in any court to recover damages alleged to have been inflicted thereby until the Commission had made its finding as to the reasonableness of the rule; that the Commission had authority to make examination and report upon the amount of damages which the plaintiff had suffered from the unjust discrimination alleged in its complaint; and that where it appears that the act has been violated, and the requisite ruling as to the unreasonableness of the practice assailed has been made by the Commission, section 9 of the Commerce Act is applicable. And with reference to said section the court said:

"This provision defines the remedies to which a person in the situation of the plaintiff is entitled, and the terms of the provision clearly indicate that these remedies are exclusive. The express requirement of an election between the proceeding before the Commission and suit in the federal court leaves no room for the conclusion that there is an option in such case to resort to the State court. Where the proceeding has been had before the Commission and reparation awarded, suit under section 16 (as amended in 1910) may be brought in either a State or federal court, but this is after the Commission's award has been made."

In reponse to the insistence that no administrative question was involved the court said:

"It is said that the present action is brought to recover damages caused by the violation or discriminatory enforcement of the carrier's own rule, and that in such case, no administrative question being involved, resort to the Commission was not necessary. And this, it is urged, was held in *Penna. R. R.* v. *Puritan Coal Co.*, 237 U. S., 121, 35 Sup. Ct., 484, 59 L. Ed., 867. See, also, *Illinois Central R. R.* v. *Mulberry Hill Coal Co.*, decided June 14, 1915, 238 U. S., 375, 35 Sup. Ct., 760, 59 L. Ed., 1306. The distinction, however, is apparent. In the cases cited the plaintiff had not invoked the jurisdiction of the Commission. In this case, it had done so. It went before the Commission, with its complaint under the act, assailing the rule of the company, and it secured from the Commission a finding as to the illegality of the rule and the violation of the act. This proceeding established the character of the claim so far as interstate transactions were concerned, and it could be prosecuted solely under the federal statute. This follows necessarily from the supremacy of the federal legislation in relation to interstate commerce. So long as the creative provisions of the federal act did not appear to be involved, and the wrong was not disclosed in the aspect presented by the Commission's finding, the plaintiff was free to avail itself of common-law remedies or of those afforded by local statutes. But when, as a result of its own insistence upon its federal right under the act, it appeared that the act had been violated and that the special remedial provisions of the act were applicable, it was not possible for the plaintiff to ignore the statute it had thus called into play and disregard its provisions for the purpose of measuring relief by local standards.

The federal statute governed the plaintiff no less than the defendant. In the situation in which the plaintiff stood after the Commission's finding, that statute determined the extent of the damages it was entitled to recover with respect to interstate sales and shipments, and the plaintiff was not free to seek another remedy in the state court and there to secure treble damages under the State statute with respect to the same transactions.

"This is not to say that the finding of the Commission as to the amount of damages has any other effect than that prescribed in section 16 of the act. It is simply to hold that the plaintiff, having demanded and obtained the appropriate ruling from the Commission as to the discrimination which had been practiced, was then entitled to proceed for the recovery of damages in accordance with the act, and not otherwise. The fact that the Commission had not made its award of damages at the time the action was brought is immaterial. The proceeding before the Commission was pending and the plaintiff's right and remedy were fixed by the federal act.

"We conclude, therefore, that with respect to the damage sustained by the plaintiff in its interstate business, by reason of the unjustly discriminatory distribution of cars for interstate shipments, the plaintiff was not entitled to maintain this action under the State statute."

From the foregoing authorities we reach the following conclusions:

1. That section 22 simply reserves to the shipper his remedies existing at common law or by statute in so far as same do not conflict with the provisions of the

act; that is to say, that where no administrative question is involved, as defined in *Texas & Pacific R. R. Co. v. Abilene Cotton Oil Co.,* supra, and where the shipper does not invoke the aid of the Commission, he may prosecute his common-law or statutory remedies.

2. That where he applies to the Commission he must proceed in accordance with the act.

3. That the act (section 9) provides two methods for the ascertainment of damages, which are exclusive— one to the Commission and the other to the federal court.

4. That by section 16, when an award of damages has been made by the Commission, and the order awarding same is not complied with, the shipper may then institute suit in either the federal or the State courts.

5. That the complainant's suit does not fall within any of these provisions and the chancery court was therefore without jurisdiction to determine the questions raised by the pleadings in this cause.

Since the court is without jurisdiction it is unnecessary to pass upon the other questions submitted.

The decree of the chancellor is therefore affirmed, with costs.